710 So.2d 223 (1998)
Sara C. FERNANDEZ, Appellant,
v.
Anthony A. FERNANDEZ, Appellee.
No. 97-04560.
District Court of Appeal of Florida, Second District.
May 8, 1998.
*224 David A. Maney and Patricia A. Kuhlman, Maney, Damsker, Harris & Jones, P.A., Tampa, for Appellant.
Brett R. Rahall, Rahall & Schaffer, P.A., Tampa, for Appellee.
CASANUEVA, Judge.
The wife, Sara C. Fernandez, challenges an order of the trial court that denied her claim for temporary alimony and other relief. The trial court denied her application for temporary alimony based on Connor v. Southwest Florida Regional Medical Center, Inc., 668 So.2d 175 (Fla.1995). We disagree that Connor applies to this case and reverse.
The parties were married on May 25, 1997, after entering into an antenuptial agreement. Ninety-two days later, the husband instituted an action for dissolution of marriage. In the antenuptial agreement, the wife had contracted away her right to temporary alimony. Despite the clear language of the antenuptial agreement, she sought an order of temporary alimony. See Belcher v. Belcher, 271 So.2d 7 (Fla.1972). The husband opposed her application, contending the rule in Belcher had been abrogated by the supreme court's decision in Connor. The trial court concurred with the husband and denied the wife's application for temporary alimony.
In Belcher, the supreme court faced an issue similar to the one we face here. The supreme court framed the issue as follows: "[W]hether or not by express provision in an antenuptial agreement the husband can ... contract away his future obligation to pay alimony, suit money and attorney's fees during a separation prior to dissolution of the marriage." Id. at 9. The supreme court answered its question in the negative, reasoning that an antenuptial agreement is subject to the existing laws of our state including the law that requires a husband to be responsible for the support of his wife while they are married. To have concluded otherwise, the supreme court noted, would have required it to abandon a "historical principle supported by an unbroken line of cases since shortly after Florida became a state in 1845." Id.
Connor, on the other hand, decided an equal protection issue involving the doctrine of necessaries. Broadly stated, this doctrine provides the legal means to protect a third party creditor who had furnished support to a wife, i.e., her "necessaries," when her husband failed to fulfill his obligation to support her during coverture. The narrow issue before the supreme court in Connor was whether the doctrine of necessaries should be expanded to make both parties equally responsible to a creditor who had provided necessary services to one spouse where the other spouse had not contracted with the third party creditor to be responsible for those services. Id. at 175. Based on constitutional considerations that demand equality between the sexes, the supreme court abrogated the common law doctrine of necessaries, leaving to the legislature the policy question of whether to impose liability equally on the spouses for each other's necessaries. Id. at 177.
Connor was not decided in the context of dissolution of marriage nor did it involve the duty of support between spouses after a petition for dissolution is filed but before entry of the final judgment of dissolution. That duty is imposed by statute. See §§ 61.071 and 61.08, Fla. Stat. (1997); see also § 61.09. Because of its distinguishable facts and law, we conclude that the supreme court's abrogation of the doctrine of necessaries in Connor *225 has not overruled Belcher. Belcher still requires one spouse, who has the ability, to support the other more needy spouse until a final judgment of dissolution is entered even in the face of an antenuptial agreement to the contrary. See Lawhon v. Lawhon, 583 So.2d 776 (Fla. 2d DCA 1991); Appelbaum v. Appelbaum, 620 So.2d 1293 (Fla. 4th DCA 1993); Lang v. Lang, 551 So.2d 547 (Fla. 4th DCA 1989); Veiga v. Veiga, 563 So.2d 1089 (Fla. 5th DCA 1990); Fechtel v. Fechtel, 556 So.2d 520 (Fla. 5th DCA 1990). Our independent research could locate no case citing Connor as controlling authority in marital law matters involving intraspousal support issues.
Nonetheless, being aware that perceptions have changed since Belcher was decided that may require a review of existing legal principles and because Connor was decided after Belcher, we certify the following issue as one of great public importance:
MAY A SPOUSE, IN ACCORD WITH LAW, BY EXPRESS PROVISION IN AN ANTENUPTIAL AGREEMENT, CONTRACT AWAY A FUTURE OBLIGATION TO PAY TEMPORARY ALIMONY, COSTS AND ATTORNEY'S FEES DURING THAT PERIOD OF TIME BETWEEN THE FILING OF A PETITION FOR DISSOLUTION OF MARRIAGE AND THE ENTRY OF A FINAL JUDGMENT OF DISSOLUTION OF MARRIAGE?
We reverse the order of the trial judge and remand with instructions to determine whether the wife qualifies for an award of temporary support under sections 61.071 and 61.08 and whether the husband has the ability to pay.
THREADGILL, A.C.J., and PATTERSON, J., concur.